IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LEANNA J. WEBB,** | |
| **Plaintiff,** | **Case No. 2:10-cv-289** |
| v. | **Judge Peter C. Economus** |
| **ASSET ACCEPTANCE, LLC.** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant.** | |

This case arises from a lawsuit filed in Kentucky state court by Defendant Asset Acceptance, LLC ("Asset"), a purchaser of defaulted consumer debt, against Plaintiff Leanna J. Webb, over allegedly defaulted credit card debt. Webb filed this action against Asset alleging that the complaint and exhibits filed in state court violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* This matter is before the Court for consideration of Asset's motion for summary judgment. (Dkt. 21.) For the reasons set forth below, Asset's Motion is **GRANTED**, and this case is **DISMISSED**.

**I.     Background**

Plaintiff Webb opened a credit card account (the "Credit Account") with National City Bank sometime around 2005. For background purposes, the Court notes that Webb testified that she closed the Credit Account in 2006, explaining that her mother made the last payment and Webb "cut the card up." Webb thought her mother had kept the receipt showing that the Credit Account was paid in full, but her mother is unable to find the receipt. (Webb Dep. 23:1–15, 25:12–14, 33:8–20, Aug. 3, 2010.)

In 2009, Asset filed a complaint against Webb in Kentucky state court, and Webb was served with four documents (the "State Court Documents"): a summons; a complaint (the "Asset Complaint"); an affidavit by Judy Melasi, dated December 16, 2008 (the "Asset Affidavit"); and

a one-page document containing account information (the "Asset Statement").  (Webb Dep. 35:1–7, Ex. A.)  Webb's receipt of the State Court Documents constituted her first contact with Asset.  (*Id.* at 36:12–20.)

The Asset Complaint states the following:

> 1. The Defendant(s) is indebted to the Plaintiff under the agreement or account evidenced by the exhibit(s), as attached and incorporated hereto as Exhibit "A".
>
> 2. ASSET ACCEPTANCE LLC purchased this account.  The original credit grantor is referenced on the exhibit(s) attached hereto.
>
> 3. Defendant(s) has failed to pay the Plaintiff the remaining balance of its account in the sum of $894.54, plus accrued interest in the amount of $469.50, together with interest at the annual rate of 8% from December 6, 2008, until the date of Judgment, then at 12% per annum on the Judgment until satisfied.
>
> WHEREFORE, Plaintiff respectfully demands Judgment against the Defendant(s) for the sums, plus Interest as set forth above, court costs and any other relief to which it may appear entitled.
>
> . . .
>
>    THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

(Webb Dep. Ex. A at 2.)

The Asset Affidavit states the following:

> I, Judy Melasi[,] being first duly sworn[,] depose[] and state[]:
>
> That I am the Supervisor of ASSET ACCEPTANCE, LLC . . .
>
> That there is justly due and owing on the account, the sum of $1364.04 representing the charged off amount and interest.
>
> That the said account originally with NATIONAL CITY BANK[], account number [redacted]1939, has been purchased by ASSET ACCEPTANCE, LLC, [which] now owns said account and has all rights connected therewith including the right to institute this action.

(Webb Dep. Ex. A at 3.)

The Asset Statement is a form document prominently featuring Asset's logo and name. It contains fields labeled as follows: "ACCOUNT NUMBER," "CURRENT BALANCE," "STATEMENT DATE," "DUE DATE" (specifying "Due" rather than a specific date), "DATE OF LAST PAYMENT," "DATE OF DELINQUENCY," "PURCHASED ON," "CHARGE OFF AMOUNT," "INTEREST RATE," "SERVICE ADDRESS (IF APPLICABLE)," and "INTEREST DUE AS OF DEC 16 2008." The bottom of the form contains the statement, "THIS COMMUNICATION IS FROM A DEBT COLLECTOR." (Webb Dep. Ex. A at 4.)

In an affidavit submitted in this case, Judy Melasi explains the process she followed when she signed the Asset Affidavit. (Melasi Aff., Jan. 17, 2011.) As an employee in Asset's legal forwarding department, Melasi assists attorneys in the filing of collection lawsuits. She states:

> 3. Before signing the [Asset Affidavit], I reviewed it. I also reviewed the [Asset Statement] before signing the [Asset Affidavit] to make sure that the information in the [Asset Affidavit] was correct. Pursuant to Asset's policy, I initialed the bottom of [the Asset Statement] indicating that I reviewed and approved its contents.
>
> 4. The information concerning the account identified in the [Asset Affidavit] and [the Asset Statement] came from the original creditor, National City Bank, and from other information contained in Asset's records that Asset verified upon its purchase of the account and through its efforts to collect the account.

(*Id.* at ¶¶ 3–4.)

Webb testified that, when she received the State Court Documents, she "didn't know who [Asset] was at first." (Webb Dep. 35:18–21.) When she read the Asset Complaint and the Asset Affidavit, however, she immediately understood that Asset had purchased the Credit Account from National City Bank. (*Id.* at 36:21–39:5.) Within five or ten minutes of reading the State Court Documents, she understood that they related to the Credit Account and called her mother

3

to ask for the receipt showing that the Credit Account was paid in full. (*Id.* at 40:10–41:2, 67:13–21.) Webb's testimony confirms her understanding:

| | |
|---|---|
| [Question] | Was it your understanding after you received [the State Court Documents] that [Asset] had purchased your National City credit card account? |
| [Webb] | That's what it says on every page. |
| [Question] | So that was your impression, right? |
| [Webb] | Correct. |
| . . . | |
| [Question] | . . . Did you have the impression that [Asset] believed it was not paid off? |
| [Webb] | Correct. |

(*Id.* at 48:20–49:10.) When Webb called her mother to request the receipt showing that the Credit Account was paid in full, her mother was not able to locate the receipt. Webb then called National City Bank to request an account statement, but the bank referred her to Asset. (*Id.* at 67:8–69:2.)

Regarding the Asset Affidavit, Plaintiff testified that she disputes only the statement that she owes a balance on the Credit Account.

| | |
|---|---|
| [Question] | Is there anything in that affidavit that you say is wrong that you would stand here and swear under oath, "This is wrong"? |
| [Webb] | Well, I mean, I don't believe I owe that balance. |
| [Question] | So you dispute that part of the affidavit; right? |
| [Webb] | Yes. |
| [Question] | Is there anything else in that affidavit you dispute? |
| [Webb] | No. |

(Webb Dep. 71:12–22.) She also suggests that the Asset Statement makes it appear that she had an account with Asset, but admitted that it does not resemble a credit card statement:

| | |
|---|---|
| [Question] | Did [Asset] make some false statement to you anywhere in [the State Court Documents]? |

4

| | |
|---|---|
| [Webb] | Well, this looks like I had an account with [Asset]. |
| . . . | |
| [Webb] | . . . It looks like an account summary, but I have never had an account with them. |
| . . . | |
| [Question] | . . . [W]hen you opened up [the State Court Documents], you knew it wasn't a credit card statement, didn't you? |
| [Webb] | Didn't look like a credit card statement to me. |
| [Question] | Doesn't look anything like a credit card statement, does it? |
| [Webb] | No. |

(*Id.* at 75:1–76:18.) She later clarified that the Asset Statement did not resemble a credit card statement, but looks like "a statement of account." (*Id.* at 77:6–78:2.)

Webb alleges in her Second Amended Complaint that Asset violated the FDCPA, specifically 15 U.S.C. §§ 1692e, 1692e(10), and 1692f, by representing in the Asset Complaint that the Asset Statement, alone or together with the Asset Affidavit, "constituted proof that Plaintiff Webb had entered into a certain credit card agreement" and that she "owed a specific sum of money," when (1) the Asset Affidavit allegedly was signed by a person "who had no personal knowledge concerning the matter" and (2) the Asset Statement allegedly was "made up to look like a monthly statement" or "a monthly statement from the original creditor." (2d Am. Compl. ¶¶ 18, 19, 23, 24.)

## II.  Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c)(2). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001)

(citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 556–57 n.7 (6th Cir. 2000).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56 (c)). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**III.** **Analysis**

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10), and using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. The Sixth Circuit has held:

> Courts use the "least sophisticated consumer" standard, an
> objective test, when assessing whether particular conduct violates

> the FDCPA. This standard ensures that the FDCPA protects all consumers, the gullible as well as the shrewd. Nonetheless, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.

*Hartman v. Great Seneca Financial Corporation*, 569 F.3d 606, 611–12 (6th Cir. 2009) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332–33 (6th Cir. 2008)) (internal citations and quotation marks omitted).

### A.  Asset Affidavit

Webb alleges that the Asset Affidavit was "deceptive and misleading," and Asset's reliance on it violated the FDCPA, because Judy Melasi allegedly "had no personal knowledge concerning the matter." (2d Am. Compl. ¶ 18.) Arguing that a person signing an affidavit must have personal knowledge in order to be competent to testify (Dkt. 25 at 2), Webb apparently attempts to assert a claim similar to that in *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009).

In *Midland Funding*, the Northern District of Ohio held that the defendant violated the FDCPA by attaching to its debt collection complaint an affidavit which was "as a whole . . . both false and misleading." *Midland Funding*, 644 F. Supp. 2d at 969, 972. In that case, the affiant had attested that the affidavit was based upon his personal knowledge, but the affiant testified that he personally signed between 200 and 400 such affidavits per day, without personal knowledge and usually without verifying the information via business records. *Id.* at 966–67. The court noted, "[i]t is unclear . . . why such a patently false affidavit would be the standard form used" when the defendants "could easily prepare a form affidavit that achieved the same goals without being misleading by reflecting the truth, plain and simple. Rather than basing the

7

affidavit on false personal knowledge, they could base it on the accuracy of the records kept and the accuracy of the data." *Id.* at 969.

A similar claim was asserted against Asset in a recent case before this Court, *Myers v. Asset Acceptance LLC*, 750 F. Supp. 2d 864 (S.D. Oh. 2010). This Court noted in *Myers*:

> [The affiant] did not state that his affidavit was based on personal knowledge, unlike the affiant in the distinguishable [*Midland Funding*]. In fact, rather than constituting the type of affidavit "base[d] . . . on false personal knowledge" that *Midland Funding* rejected, the Sandusky affidavit more likely epitomizes that case's recommended affidavit "base[d] . . . on the accuracy of the records kept and the accuracy of the data." There is no evidence before this Court that the records supporting the existence of the debt or the amount of the debt are incorrect.

*Myers*, 750 F. Supp. at 867 (internal citations omitted).

This Court finds that the analysis applied in *Myers* is equally applicable to the virtually identical claim asserted by Webb in this case. Here, Melasi did not attest that the affidavit was based on personal knowledge; rather, the affidavit is based on the accuracy of the relevant business records. The fact that Melasi does not have personal knowledge regarding Webb's alleged credit card debt does not render her affidavit deceptive or misleading.

Webb testified that she does not believe she owes a balance on the Credit Account, contrary to the statements in the Asset Affidavit. (Webb Dep. 71:12–22.) However, in her Second Amended Complaint, Webb does not dispute that she owes a balance and does not attempt to state a claim based on full payment on the Credit Account. Because Webb does not allege that the Asset Affidavit is otherwise deceptive or misleading, the Court finds that Asset's reliance on the Asset Affidavit does not violate the FDCPA.

### B. Asset Statement

Webb also alleges that Asset's reliance on the Asset Statement violated the FDCPA because it allegedly was "made up to look like a monthly statement" or "a monthly statement from the original creditor." (2d Am. Compl. ¶¶ 18, 23.)

In *Hartman*, the Sixth Circuit addressed whether a statement of account attached to a state court collections complaint violated the same provisions of the FDCPA involved here. The *Hartman* defendants had "attached to each complaint, as Exhibit A, a document which had been generated at [the *Hartman* defendant's] behest. . . . [T]hese documents facially resembled credit-card statements but were not actually copies of the . . . credit-card accounts on which [the plaintiffs] were sued." *Hartman* at 612. The Court noted that, although the exhibit identified the defendant as an "assignee," "the document on the whole looks like a credit-card statement issued by" the defendant:

> The only language in the document indicating that [the *Hartman* defendant] a is a debt collector is the word "assignee," a legal term that would not necessarily help the least sophisticated consumer understand the relationships between the parties listed. . . . Given the fact that the document appears to be a recent credit-card bill, which it is not, and with few indications to the contrary, there is a genuine issue of material fact as to whether this document would mislead the least sophisticated consumer.

*Hartman* at 613.

The *Myers* plaintiff also asserted a similar claim against Asset in that case, which involved a substantially identical statement of account. *Myers*, 750 F. Supp. 2d at 868–70; Case No. 2:09-cv-696 Dkt. 1-2. As in *Myers*, the Court concludes in this case that the Asset Statement is distinguishable from the statement in *Hartman*. Because the Court's analysis in *Myers* also applies in this case, the Court adopts it virtually verbatim. In this case, the Court finds:

> [U]nlike in *Hartman*, [the Asset Statement] notes explicitly the date of delinquency on the debt and the date Asset purchased the

9

debt. This reflects when the debt to Asset accrued. Additionally, rather than only including the word "assignee" as in *Hartman*, [the Asset Statement] stated in all capital letters that it was from a debt collector. There is no more explicit way to state that Asset is a debt collector.

Plaintiff argues that because "debt collector" is a legal term and because a credit card company could be a debt collector even if not required to label itself as such as a statutory obligation, a least sophisticated consumer could be confused. This argument overlooks the fact that a least sophisticated consumer is not likely to be aware of the breadth of the term's potential scope in conjunction with mandated language requirements. It also overlooks the fact that *Hartman* only requires that a debt collector make clear that it is a debt collector, not that it explain the nuances of that term. Finally, Plaintiff overlooks the context created by the statement's various components. No one part, such as the debt collector language, should be read in isolation. Instead, the statement must be regarded as a whole.

Viewed in this light, a least sophisticated consumer will understand [upon reviewing the State Court Documents] that [the Asset Statement] is from Asset, a debt collector that is attempting to collect on a debt purchased on [October 9, 2007], from [National City Bank], after the debt became delinquent on [May 3, 2006]. To conclude otherwise would be to ignore select provisions of the statement in order to find confusion, deception, or falsity where there is none. The common elements of [the Asset Statement] that would also appear on a credit card statement–the account number and interest rate–do not create confusion when placed in context, but provide the link for a least sophisticated consumer to connect the credit card account to the Asset account so that the consumer is told what was purchased and can readily see the origin of the debt. The greater specificity and detail contained within [the Asset Statement] contrasts with the statement deemed questionable in *Hartman*. Under the least sophisticated consumer test, no reasonable juror could conclude that [the Asset Statement] constitutes or presents a false, deceptive, or misleading representation or means of collecting the debt. Nor could a reasonable juror conclude that [the Asset Statement] constitutes or presents an unfair or unconscionable means to collect or attempt to collect the debt.

*Id.* at 869–70.

While Webb does not constitute a "least sophisticated consumer," her deposition testimony lends support to the conclusion that the State Court Documents, including the Asset Statement, are not false, deceptive, or misleading. As discussed above, upon reviewing the State Court Documents, Webb immediately understood that Asset had purchased her alleged credit card debt from National City Bank, and she understood that the Asset Statement was not a credit card statement.

Because no reasonable juror could conclude that the Asset Statement is false, deceptive, or misleading, the Court finds that Asset's reliance on it does not violate the FDCPA.

## IV. Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Defendant's Motion (Dkt. 21), **DISMISSES** this case, and directs the Clerk to enter judgment for Defendant.

**IT IS SO ORDERED.**

                                      **/s/ Peter C. Economus  -  September 21, 2011**
                                      **UNITED STATES DISTRICT JUDGE**